# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SYNEEDA LYNN PENLAND, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 13-1465 (RMC) |
| RAYMOND EDWIN MABUS, JR., Secretary of the Navy, *et al.*, | ) |
| Defendants. | ) |

## OPINION

Syneeda Lynn Penland is a former Lieutenant Commander in the United States Navy. She was convicted of adultery and other misconduct in a military court martial and was discharged shortly before she would have become eligible for retirement benefits. Ms. Penland alleges that the Navy violated her constitutional rights in her court-martial proceedings and that the proceedings were fundamentally defective. She seeks reversal of subsequent Navy decisions leading to her separation. The Navy moves to dismiss for lack of subject matter jurisdiction on the grounds of sovereign immunity. The Navy is wrong. However, as explained below, only Ms. Penland's prayer for relief from the decision of the Board for Correction of Naval Records will go forward. Counts I, II and III of the Amended Complaint will be dismissed. In addition, the Court will dismiss all individual Defendants and the sole remaining Defendant will be Raymond E. Mabus, Jr., Secretary of the Navy, in his official capacity.

## I. FACTS

Syneeda Lynn Penland enlisted in the United States Navy as an undesignated seaman in 1989. She received her bachelor's degree and two masters' degrees, was commissioned as a Naval officer, received numerous awards, and was certified as a Navy auditor and inspector general. She began serving as command comptroller for Maritime Expeditionary Support Group ONE (MESGO), in San Diego, California, beginning on January 1, 2006.

In January 2007, Chief Petty Officer (CPO) Kimberly Lewis-Wiggan brought a flash drive to the attention of Commander Mei Ling Marshall, staff attorney for MESGO; the flash drive contained several photos of Ms. Penland having sexual relations with a male whose face could not be identified.[1] According to Ms. Penland, CPO Lewis-Wiggan improperly obtained the photos from the laptop of Lieutenant Junior Grade (Lt.) Mark Wiggan, her husband, but with whom CPO Lewis-Wiggan was engaged in divorce proceedings.[2] The photos were allegedly on Lt. Wiggan's computer because Ms. Penland had previously loaned him her digital camera and he had inadvertently downloaded the photos onto his laptop.

When the photos were discovered, Ms. Penland was "offered mast, a low level administrative punishment." Am. Compl. ¶ 25. She declined mast and her commanding officer,

---

[1] The Amended Complaint alleges that the man in the photos is an unmarried civilian with whom Ms. Penland was formerly in a long-term relationship. Am. Compl. [Dkt. 10] ¶ 3. However, in her opposition to Defendants' motion to dismiss, Ms. Penland intimates that the man in the photos is Lt. Wiggan, stating that she "was single at the time of the conduct in question, and reasonably believed that [Lt.] Wiggan was divorced . . . . The private sexual conduct had no impact on [her] military duties . . . . Both [she] and her partner were commissioned officers." Pl. Opp. [Dkt. 15-1] at 7. The true identity of the man in the pictures is immaterial to the question of sovereign immunity.

[2] At the time of the relevant events, Lt. Wiggan and his wife "were physically separated and in the final stage of a bifurcated divorce that, based on the advice of his legal counsel, [Lt.] Wiggan reasonably believed had already . . . been legally terminated. He communicated this belief to others, including Plaintiff." Am. Compl. ¶ 4 (footnote omitted).

Captain John Sturges, formally charged her with adultery, conduct unbecoming an officer, disobeying a lawful order, and making a false official statement. The charges were based on allegations that Ms. Penland used her Navy-issued cellular phone to harass CPO Lewis-Wiggan, lied about making such calls, distributed nude photos of Lt. Wiggan to CPO Lewis-Wiggan, and participated in a sexual relationship with Lt. Wiggan. *See* Exhibits in Support of Def. Mot. to Dismiss [Dkt. 12-2], Def. Ex. 1 at 2-4;[3] *see also* Def. Ex. 4 at 14. Ms. Penland alleges that Capt. Sturges retaliated against her by bringing severe charges because she had accused him of financial improprieties in his official duties. She was stripped of her security clearance, immediately removed from duty, and faced a Navy court martial. Lt. Wiggan was not prosecuted for his alleged role in the affair and, instead, received immunity. He denied under oath that he and Ms. Penland had had a sexual relationship. At trial, the prosecution relied on the testimony of CPO Lewis-Wiggan, who identified Lt. Wiggan as the man in the photos based on the location of moles on his body.

On May 24, 2008, Ms. Penland was convicted on four counts by the members of the court martial: (1) violating a lawful general order by wrongfully using government property for other than authorized purposes in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892; (2) making a false official statement in violation of Article 107, UCMJ, 10 U.S.C. § 907; (3) conducting herself in a matter unbecoming an officer in violation of Article 133, UCMJ, 10 U.S.C. § 933; and (4) adultery in violation of Article 134, UCMJ, 10 § U.S.C. 934. *See* Def. Ex. 1 at 2-4. She was sentenced to a reprimand, a 60-day term of incarceration, and a fine of $9,000. The court-martial sentence did not mandate that she be separated from the Navy.

---

[3] Defendants' exhibits are not paginated. All citations to them reference the page numbers assigned by the electronic case filing (ECF) system.

Four months later, Capt. Sturges ordered Ms. Penland to appear before a Navy administrative Board of Inquiry (BOI) to show cause why she should not be discharged.[4] Ms. Penland alleges she was not permitted to introduce testimony from her civilian boyfriend at the BOI hearing and the BOI was not "allowed to consider fundamental defects" in the court martial when making its decision. Am. Compl. ¶ 26. The BOI found that Ms. Penland had committed misconduct and substandard performance of duty, and recommended that she be separated from Naval Service with the characterization of "General (Under Honorable Conditions)."[5] Def. Ex. 3 at 12. The BOI's recommendation was accepted and approved on June 29, 2009 by the Acting Assistant Secretary of the Navy (Manpower and Reserve Affairs).[6]

On July 29, 2009, Ms. Penland filed a petition for a writ of mandamus and a motion for a preliminary injunction to challenge and forestall her imminent discharge. *See Penland v. Mabus*, 643 F. Supp. 2d 14, 17 (D.D.C. 2009). The court denied her motions. *See id.*

---

[4] Ms. Penland alleges that "[h]er command's authority to order this hearing was discretionary." Pl. Opp. at 4.

[5] The military recognizes three kinds of administrative discharges: Honorable, Under Honorable Conditions (also termed General Discharge), and Under Other Than Honorable Conditions. 32 C.F.R. § 724.109(a). A discharge "Under Honorable Conditions" is "contingent upon military behavior and performance of duty which is not sufficiently meritorious to warrant an Honorable Discharge." 32 C.F.R. § 724.109(a)(2). "There is a stigma associated with General and Other Than Honorable discharges." *Vince v. Mabus*, 956 F. Supp. 2d 83, 85 n.1 (D.D.C. 2013) (citing *Kauffman v. Sec'y of the Air Force*, 415 F.2d 991, 995 (D.C. Cir. 1969); *Martin v. Donley*, 886 F. Supp. 2d 1, 10 (D.D.C. 2012)).

[6] Ms. Penland alleges that "[f]or the past five years, [she] has sought administrative relief by challenging her discharge through Navy and Department of Defense administrative channels, including, most recently, an appeal to the Board for Correction of Naval Records. Once each of those channels was exhausted, [she] had no other recourse than to file this action." Am. Compl. ¶ 18. According to *Penland v. Mabus*, a prior case filed by Ms. Penland in this district, Ms. Penland appealed her conviction to the General Courts-Martial Convening Authority (GMCA), which declined to reverse the conviction. 643 F. Supp. 2d 14, 17 (D.D.C. 2009). The matter was then referred to the Office of the Judge Advocate General of the Navy (JAG), which upheld the conviction in February 2009. *Id.*

at 21, 23.[7] On July 31, 2009, Ms. Penland was officially discharged from the U.S. Navy with a discharge of "General (Under Honorable Conditions);" "Unacceptable Conduct" was the reason listed for separation. Def. Ex. 5 at 17. Ms. Penland states that she was involuntarily separated from the Navy five months before she was eligible for retirement benefits, including a lifetime pension and medical coverage.

On July 18, 2012, Ms. Penland filed an application for correction of military records under 10 U.S.C. § 1552, seeking to have her conviction overturned. The Board for Correction of Naval Records (BCNR) reviewed her application and decided that "the evidence submitted [by Ms. Penland to the BCNR] was insufficient to establish the existence of probable material error or injustice." Def. Ex. 7 at 21. Writing to Ms. Penland on May 15, 2013, the BCNR noted that it did not have authority to remove a conviction by a general court martial and that it could only review such a sentence for clemency. *Id.* at 22. Upon review, the BCNR found her sentence was appropriate considering the nature of her offenses. *Id.* Finally, the BCNR advised that the Military Whistleblower Protection Act protects only those service members who make a protected communication to an inspector general or member of Congress prior to any alleged reprisal, and it found no evidence that Ms. Penland had done so prior to her referral to the court martial. *Id.*

Ms. Penland is currently residing in Buford, Georgia. She is unemployed and receiving treatment for blood cancer. Her only source of income is her monthly Veterans Affairs disability payments.

Ms. Penland filed her initial Complaint in this matter on September 26, 2013 [Dkt. 1], and filed an Amended Complaint on April 28, 2014 [Dkt. 10]. She sues Raymond E.

---

[7] On June 28, 2010, the case was dismissed without prejudice for failure to prosecute. *Penland v. Mabus*, Civ. No. 09-1417 (RMU), 2010 U.S. Dist. LEXIS 64356 (D.D.C. June 28, 2010).

Mabus, Jr., Secretary of the Navy, and names five other Naval officers who had official duties related to her court martial or the BOI.[8]  The Amended Complaint does not state whether Ms. Penland intended to sue Secretary Mabus and these other Navy officers in their official or personal capacities.  Its alleged bases for jurisdiction and factual claims support only a suit against Secretary Mabus in his official capacity.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (A suit against the head of an agency "is, in all respects other than name, to be treated as a suit against the entity.").  Thus, the Court will dismiss all Defendants *sua sponte* with the exception of Secretary Mabus in his official capacity.

The Amended Complaint alleges that Ms. Penland's "court-martial was marred by several fundamental defects, which taken in totality call into question the basic fairness of her prosecution, and which give this Court jurisdiction to inquire [into] the legality of her prosecution." Am. Compl. ¶ 19.  Ms. Penland then makes three broad claims that the Court construes to be allegations of fundamental defect in the court-martial proceedings.  Count One alleges that the Navy's prosecution of Ms. Penland for adultery before a general court martial was part of a pattern of selective prosecution of female officers in violation of the Equal Protection Clause of the Fourteenth Amendment.  Count Two alleges that the Navy violated Ms. Penland's due process rights under the Fifth Amendment by, among other complaints, prosecuting Ms. Penland for private sexual activity between consenting adults, selectively prosecuting her in retaliation for her complaints against her superiors for alleged financial improprieties, and refusing to allow the BOI, after her conviction, to hear more evidence or consider "the fundamental defects in her court-martial." *See id*. ¶ 4.  The Third Count alleges

---

[8] The individual defendants are: John Sturges, III; Gene Harr; Donald Bullard; and Leendert Hering, Sr., all former Navy officers, and Jonathan Greenert, Chief of Naval Operations.  Am. Compl. ¶¶ 13-17.

that the Navy violated the Military Whistleblowers Protection Act (MWPA), 10 U.S.C. § 1034.[9] Ms. Penland also argues her entitlement to the following relief: (1) reversal of the BOI's recommendation that she be separated from the Navy based on her court-martial conviction; (2) an order that the Navy retire Ms. Penland from active duty at whatever rank she would have attained in the interim; and (3) reversal of the BCNR's decision to affirm her conviction and an order requiring it to characterize her discharge as honorable. Based on these prayers for relief, the Court finds that Ms. Penland's challenges to decisions made by the BOI and BCNR should be deemed additional claims.[10]

In her Amended Complaint, Ms. Penland invokes this Court's jurisdiction under the general provision for federal question jurisdiction, 28 U.S.C. § 1331, and the Administrative Procedure Act (APA), 5 U.S.C. § 701. Venue is proper under 28 U.S.C. §§ 1391 *et seq*. Defendants filed a motion to dismiss for lack of subject matter jurisdiction on June 20, 2014. The motion is based entirely on sovereign immunity.

---

[9] Ms. Penland pled a violation of her rights under the Fourth Amendment in her initial Complaint but dropped that claim in her Amended Complaint. The Amended Complaint continues to recite allegations that CPO Lewis-Wiggan was an agent of Navy superiors when she searched Lt. Wiggan's computer without a warrant and that anything uncovered in that search was inadmissible in the court martial, Am. Compl. ¶ 32, but has no accompanying alleged violation of law. The Court concludes that the failure to plead a Fourth Amendment violation in the Amended Complaint was intentional and finds that Ms. Penland has abandoned and waived any such claim.

[10] According to Ms. Penland, she "does not ask for monetary damages" under the Tucker Act or any other statute. Pl. Opp. at 3. Indeed, the Administrative Procedure Act precludes Ms. Penland from seeking such relief. *See* 5 U.S.C. § 702 (providing for limited review of agency actions only in cases "seeking relief other than money damages"). Still, the fact that she might receive some monetary relief if she is successful in overturning her discharge does not deprive this Court of jurisdiction. *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006) (holding that "the fact that in seeking the correction of a military record the plaintiff may, if successful, obtain monetary relief from the United States in subsequent administrative proceedings is insufficient to deprive the district court of jurisdiction" and noting that "the phrase 'retirement benefits' connotes a host of benefits to which no monetary value can be attached").

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss for Lack of Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction.  No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and an Article III requirement.  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists.  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court reviews the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  Nevertheless, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions."  *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).  On a motion to dismiss pursuant to 12(b)(1), the court may, where necessary, "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"  *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (holding that a court may consider materials outside the pleadings to determine its jurisdiction).

### B. Sovereign Immunity

Defendants argue that the entire lawsuit is barred by sovereign immunity. As the Supreme Court has observed, "it is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). Sovereign immunity also protects federal agencies and federal employees acting in their official capacities. *See Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 67 (D.C. Cir. 2004) (federal agencies and instrumentalities possess sovereign immunity); *Clark v. Library of Congress*, 750 F.2d 89, 102-04 (D.C. Cir. 1984) (federal employees, acting in their official capacities, are protected from suit by sovereign immunity). Unless there is clear evidence that the United States waived its immunity, claims brought against it, its agencies, or employees must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). *Sloan v. Dep't of Hous. and Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001); *Lane v. Pena*, 518 U.S. 187, 192 (1996) (sovereign immunity bars claims against United States and employees acting in official capacity unless waiver is "unequivocally expressed in statutory text").

### III. ANALYSIS

This lawsuit comes to court in a strange posture. Ms. Penland *does not challenge* the outcome of her court martial, which did not order her discharge or a denial of retirement benefits. Instead, she asks the Court to reverse the decisions of the BOI and BCNR, which were based on the underlying court-martial conviction, and to order that the Navy retire her at the appropriate rank she would have obtained in the meantime. The Court finds that the BOI's

recommendation that Ms. Penland be separated in light of her court-martial conviction is non-justiciable because it was an exercise of discretion on a military personnel matter. The Court also concludes that Ms. Penland fails to state a claim under the MWPA. With respect to the BCNR proceedings, the Court has jurisdiction under the Administrative Procedure Act to review decisions made by the BCNR, but the Court cannot make any determination on the merits because the administrative record is incomplete.

Ms. Penland's claims regarding her court-martial proceedings are more convoluted. Contrary to Defendants' argument, the Court finds that it has jurisdiction generally to determine whether court-martial proceedings suffer a fundamental error. Here, however, Ms. Penland does not challenge her court-martial conviction, and thus the Court cannot reach the merits of her claims of fundamental defect. Still, a brief discussion on the question of federal court jurisdiction over military courts-martial is warranted given Ms. Penland's argument that the BOI and BCNR decisions relied on her court-martial proceedings, which were allegedly tainted with fundamental defects.

### A. Challenge to Court-Martial Proceedings

It is clear that the grant of "[f]ederal question jurisdiction [in 28 U.S.C. § 1331] does not by itself waive sovereign immunity." *Stone v. Castro*, Civ. No. 14-656 (CRC), 2014 WL 5514139, at *3 (D.D.C. Nov. 3, 2014) (citing *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996)). This precedent, cited by the Navy, does not go as far as the Navy hopes. Contrary to the Navy's argument, it is clear that district courts have subject matter jurisdiction under 28 U.S.C. § 1331 to hear a non-custodial plaintiff's collateral attack on a court martial when she alleges that the court martial had no jurisdiction or there was some other equally fundamental defect in the proceedings. *Schlesinger v. Councilman*, 420 U.S. 738 (1975); *Sanford v. United States*, 586

F.3d 28, 31-33 (D.C. Cir. 2009); *United States ex rel. New v. Rumsfeld* (*New II*), 448 F.3d 403 (D.C. Cir. 2006).  "[F]or non-custodial individuals such as [Ms. Penland], federal question jurisdiction under 28 U.S.C. § 1331 is the appropriate avenue for a service member to seek collateral review of the outcome of a military court-martial proceeding." *Luke v. United States*, 942 F. Supp. 2d 154, 162 (D.D.C. 2013).

*Councilman* is particularly instructive.  It renewed pertinent rules from the 19th century: (1) "'the general rule that the acts of a court-martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise,'" 420 U.S. at 746 (quoting *Smith v. Whitney*, 116 U.S. 167, 177 (1886)); but also (2) the general rule is subject to the qualification that "the court-martial's acts be 'within the scope of its jurisdiction and duty.'" *Id.*  Further, *Councilman* noted that a "[c]ollateral attack seeks, as a necessary incident to relief otherwise within the court's power to grant, a declaration that a judgment is void." *Id.* at 746-47.[11]  Thus, when a court martial lacks "jurisdiction or [has] some other equally fundamental defect," its judgment is void, not merely voidable. *Id.* n.16 ("'Persons, then, belonging to the army and navy are not subject to illegal or irresponsible courts martial. . . . In such cases, everything which may be done is void—not voidable, but void; and civil courts have never failed, upon a proper suit, to give a party redress, who has been injured by a void process or a void judgment.'") (quoting *Dynes v. Hoover*, 20 How. 65, 81 (1857)).  The Supreme Court also instructed that "void judgments, although final for purposes of direct review,

---

[11]   *Councilman* identified a "uniform approach to the problem of collateral relief from the consequences of court-martial judgments" that it traced back to the earliest days of the Republic. *Id.* at 747-48 (citing, *inter alia*, *Wise v. Withers*, 3 Cranch 331, 2 L.Ed. 457 (1806)).  Under this "uniform approach," relief in a civilian court from a court-martial "was barred unless it appeared that the judgments were void." *Id.* at 748.

may be impeached collaterally in suits otherwise within a court's subject-matter jurisdiction." *Id.* at 749.

Ms. Penland does not allege that her court martial lacked jurisdiction but does allege "fundamental" defects therein. Contrary to Defendants' argument, and without deciding whether Ms. Penland's alleged defects qualify as fundamental defects, *Councilman* makes clear that the Court would have jurisdiction to consider a challenge to Ms. Penland's court martial, if that were the relief she sought. But it is not; Ms. Penland does not challenge her court martial itself and seeks no change to its judgment. Thus, the general rule applies and civilian-court consideration of her court martial is precluded. *Councilman*, 420 U.S. at 747 (no consideration of a court martial *unless* "jurisdiction or some other equally fundamental defect" is proved).

Post-*Councilman*, recent decisions of the D.C. Circuit suggest a different standard of review. In *Sanford*, the Circuit identified "two lines of precedent" relevant to determining the standard of review for collateral challenges to courts martial. *Sanford*, 586 F.3d at 31. *Sanford* distinguished "the 'full and fair consideration' standard" applicable "for habeas review of courts-martial, and . . . the 'void' standard that applies to collateral attacks on court-martial proceedings by persons who are not in custody." *Id. Sanford* then applied *New II*, which had reasoned, "in light of *Councilman*'s point that non-habeas review is, if anything, more deferential than habeas review of military judgments, a military court's judgment clearly will not suffer such a [fundamental] defect if it satisfies [the] 'fair consideration' test." *New II*, 448 F.3d at 408.

But the *New II/Sanford* analysis is both curious and confusing. *But see McKinney v. White*, 291 F.3d 851, 853 (D.C. Cir. 2002) (noting that acts of a court martial can only be reviewed in a "collateral attack seeking a declaration that a judgment is void . . . 'because of lack of jurisdiction or some other equally fundamental defect'") (quoting *Councilman*, 420 U.S. at

747).  It is clear that, in a habeas petition after a court martial, a civilian court applies the "full and fair consideration" standard "to determine whether the military have given fair consideration to each of [the soldier's] claims."  *Burns v. Wilson*, 346 U.S. 137, 144 (1953); *see also Kauffman v. Secretary of Air Force*, 415 F.2d 991, 997 (D.C. Cir. 1969).  "[T]he test of fairness requires that military rulings on constitutional issues conform to Supreme Court standards, unless it is shown that conditions peculiar to military life require a different rule."  *Kauffman*, 415 F.2d at 997.  Conversely, in cases such as this involving a *non-habeas* collateral attack on a court martial's judgment, *Councilman* is clear that the case rests on whether the court-martial lacked jurisdiction or suffered some similar fundamental flaw that renders its judgment void.  *Councilman*, 420 U.S. at 746-47.

It would appear that "full and fair consideration" of a soldier's defense by a military court is legally distinct from whether that military court suffered a lack of jurisdiction or similar fundamental defect.  *See Runkle v. United States*, 122 U.S. 543, 556 (1887) ("To give effect to its sentences, it must appear affirmatively and unequivocally that the court [martial] was legally constituted, that it had jurisdiction, that all the statutory regulations governing its proceedings had been complied with, and that its sentence was conformable to law.").  Thus, if Ms. Penland had challenged the outcome of her court martial, the Court would consider whether fundamental error or an "irresponsible court-martial," *Councilman*, 420 U.S. at 748 n.16, rendered the judgment unenforceable, as opposed to whether the military court fully and fairly considered her claims.  Nor can Ms. Penland's claims be saved by arguing there was no full and fair consideration.  More critically, while Defendants miss the mark by arguing only lack of jurisdiction due to sovereign immunity, the Court must dismiss any claims of fundamental error in her court martial because Ms. Penland does not challenge her court-martial proceedings.

B.  **Challenge to Board of Inquiry Recommendation**[12]

After Ms. Penland served her 60-day sentence, Capt. Sturges ordered her to appear before a board of inquiry to show cause why she should not be separated from the Navy. The BOI was tasked with recommending whether or not Ms. Penland should be discharged. In this lawsuit, asserting jurisdiction under the APA, Ms. Penland asks the Court to overrule the BOI's recommendation of a General Discharge (Under Honorable Conditions).

Ms. Penland alleges that "[t]estimony from her civilian boyfriend—the man in the photos—was not allowed" before the BOI, and the BOI "was not allowed to consider fundamental defects" in the court martial when making its recommendation. Am. Compl. ¶ 26. The argument misapprehends the role of a board of inquiry. A question of fundamental defect—such as lack of jurisdiction—provides a basis for review of a court martial. As indicated, Ms. Penland does not seek review of her court martial. Instead, she attacks the BOI's failure to hear new evidence and to evaluate alleged defects in her prior court-martial proceeding. But Navy regulations make clear that a board of inquiry has no such authority: "where a reason for separation is based on an approved finding of guilty by a court-martial or a civilian criminal conviction, such a finding of guilty or criminal conviction shall be binding on the BOI." Sec Nav Inst. Encl. 8 § 11. Thus, any failure of the BOI to consider the alleged fundamental errors in the preceding court martial is immaterial because the BOI was not reviewing the merits of the conviction and did not have jurisdiction to overturn them. Its role was the more limited one of recommending whether discharge was warranted in light of the prior conviction.

A district court's "ability to review matters related to military discharges is limited, as military personnel decisions themselves lie outside the court's jurisdiction." *Burt v.*

---

[12] The Court construes Ms. Penland's challenge to the BOI recommendation as a claim that the recommendation was arbitrary and capricious under the APA.

*Winter*, 503 F. Supp. 2d 388, 390 (D.D.C. 2007) (citing *Piersall v. Winter*, 435 F.3d 319, 321-22 (D.C. Cir. 2006) (claims for retroactive promotion are nonjusticiable)); *Reilly v. Sec'y of the Navy*, 12 F. Supp. 3d 125, 140 (D.D.C. 2014) (merits of an individual military promotion not justiciable); *Caez v. United States*, 815 F. Supp. 2d 184, 188 n.4 (D.D.C. 2011) (Army decision to discharge and other "underlying personnel actions" were "not reviewable"). *See also Reilly*, 12 F. Supp. at 140 (while "courts do sometimes review the actions of military agencies, the Court's jurisdiction in this area is typically limited to challenges to *procedures*—it does not extend to the *merits* of a promotion decision") (emphasis in original). In line with this caselaw, the Court concludes that the BOI acted in a similarly discretionary manner and rendered a recommendation on a non-justiciable personnel decision.

### C. Challenge to the BCNR's Decision

Contrary to Defendants' jurisdictional argument, this Court clearly has subject matter jurisdiction to review BCNR decisions.[13] Such administrative boards "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Houseal v. McHugh*, 962 F. Supp. 2d 286, 291 (D.D.C. 2013); *Vince v. Mabus*, 852 F. Supp. 2d 96, 99 (D.D.C. 2012). Review is subject to a heightened standard of deference. *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). "All that is required is that the Board's decision minimally contain a rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotations omitted).

---

[13] Despite the fact that the APA operates as a general waiver of sovereign immunity, Defendants argue that all of Ms. Penland's claims are nonetheless barred because the APA excludes from judicial review actions taken by courts martial and military commissions. 5 U.S.C. § 701(b)(1)(F). However, the APA does not preclude a challenge to BCNR decisions.

The Navy filed a motion to dismiss based on erroneous claims of sovereign immunity before submitting the full administrative record of the BCNR proceedings. Without the administrative record, the Court has no basis to determine whether its decision should be upheld or reversed. Indeed, the parties have not briefed the relevant issues. Therefore, the Navy's motion to dismiss this aspect of the Amended Complaint will be denied.

**D. Jurisdiction Over Alleged Violation of Military Whistleblower's Protection Act**

The Amended Complaint alleges that "Defendant[] failed to comply with Military Whistleblowers Protection Act when [it] prosecuted [Ms. Penland] as reprisal for her complaints to military inspectors general." Am. Compl. ¶ 39. It also alleges that Ms. Penland had "made repeated complaints about financial improprieties in her command to Navy inspectors general and to her congressional representatives *before* she was criminally charged." *Id.* ¶ 10.

These allegations might make out a violation of MWPA, but any such violation cannot be rectified by this Court because the MWPA does not provide a private cause of action. *See Soeken v. United States*, 47 Fed. Cl. 430, 433 (Fed. Cl. 2000) ("Because the Military Whistleblower Protection Act provides strictly administrative remedies, plaintiff does not have a private cause of action on which to file a claim in this court."); *Acquisto v. United States*, 70 F.3d 1010, 1011 (8th Cir. 1995) (finding no private right of action under 10 U.S.C. § 1034 based on statutory language, legislative history, administrative regulations, and that Congress only established administrative remedy under the statute). Implicitly conceding the point, Ms. Penland argues that, nonetheless, she has a constitutional right to be free from retaliation. However, when Congress has established a specific form of redress, it precludes alternative fora. *See Wilson v. Libby*, 535 F.3d 697, 705 (D.C. Cir. 2008) (victims of an alleged constitutional

violation by a federal official have no remedy when Congress has created separate comprehensive remedial scheme).

Accordingly, Ms. Penland's allegation that the Navy violated the MWPA will be dismissed.

### IV.  CONCLUSION

The Court will grant in part and deny in part Defendants' Motion to Dismiss [Dkt. 12] for the reasons stated.  All individual Defendants, except for Secretary Mabus in his official capacity, will be dismissed by the Court.  Counts I and II, which allege various constitutional violations, will be dismissed without prejudice because Ms. Penland has not attacked the outcome of the court martial where these errors allegedly occurred and because they are wanting in factual support.  Count III, which alleges a violation of the Military Whistleblower's Protection Act, will be dismissed for failure to state a claim.  Ms. Penland's challenge to the decision of the Board for Correction of Naval Records will be the sole remaining claim.

A memorializing Order accompanies this Opinion.

Date: January 30, 2015

/s/
ROSEMARY M. COLLYER
United States District Judge