**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____          )
                                         )
SYNEEDA LYNN PENLAND,                     )
                                         )
          Plaintiff,                      )
                                         )
     v.                                   )          Civil Action No. 13-1465 (RMC)
                                         )
RAYMOND E. MABUS, JR.                     )
Secretary of the Navy,                    )
                                         )
          Defendant.                      )
_____          )

## OPINION

Syneeda Lynn Penland sued the Secretary of the Navy to invalidate a decision by
the Board for Correction of Naval Records (BCNR) to leave intact a court-martial conviction and
to deny Ms. Penland clemency.  The BCNR denied clemency, in part, because Ms. Penland was
not a whistleblower under the Military Whistleblower Protection Act.  In this respect, the BCNR
erred.  The case will be remanded for reconsideration of whether Ms. Penland's eligibility as a
whistleblower and claims of retaliation entitle her to clemency.

## I.  FACTS

The Court previously winnowed Ms. Penland's claims to one: her appeal of the
BCNR's decision.  *Penland v. Mabus*, 78 F. Supp. 3d 484, 495-96 (D.D.C. 2015).  The Court
also dismissed all defendants except for Secretary Mabus.  Only a brief recitation of facts, drawn
from the Administrative Record [Dkt. 24] (AR), is necessary for present purposes.

### A.  Events Prior to the Board for Correction of Naval Records

Syneeda Lynn Penland was a Lieutenant Commander in the U.S. Navy.  One year
into her tour at the Maritime Expeditionary Support Group (MESG) ONE, certain photos of Ms.

Penland surfaced.  These photos allegedly showed Ms. Penland, who was unmarried, having sex with the husband of an enlisted sailor in Ms. Penland's command.

After refusing non-judicial punishment, AR 324, Ms. Penland was charged on June 5, 2007 with five counts of violating the Uniform Code of Military Justice (UCMJ), including violating a lawful general order by wrongfully using government property for other than authorized purposes in violation of Article 92, UCMJ, 10 U.S.C. § 892; making a false official statement in violation of Article 107, UCMJ, 10 U.S.C. § 907; conducting herself in a manner unbecoming an officer in violation of Article 133, UCMJ, 10 U.S.C. § 933; committing indecent acts with another in violation of Article 134, UCMJ, 10 U.S.C. § 934; and committing adultery in violation of Article 134, UCMJ, 10 U.S.C. § 934.  *See generally* AR 30-32.

On June 21, 2007, Ms. Penland filed an Equal Opportunity (EO) Complaint alleging race discrimination and retaliation.  *See* AR 414-15.  The Navy investigated her allegations and collected nineteen sworn statements from individuals implicated by her complaint.  *See* AR 450.  On July 16, 2007, the EO investigator issued a seventeen-page analysis recommending that Ms. Penland's EO Complaint be dismissed as unsubstantiated.  *See* AR 450-466.  On March 18, 2008, the Navy denied Ms. Penland's request for a reinvestigation after again finding her claims to be unsubstantiated.  *See* AR 840.

On May 24, 2008, a general court martial convicted Ms. Penland of four of the five counts; the indecent-acts allegation was dismissed.  *See* AR 1-2, 25-26.  Ms. Penland was sentenced to confinement for sixty days, forfeiture of $4,500 pay per month for two months, and a written reprimand.  *See* AR at 2, 909.

Ms. Penland requested clemency on June 11, 2008.  *See* AR 38-40.  She claimed to be the only officer in the brig where she was confined, that the sentence constituted cruel and

unusual punishment, and that her sentence was the result of sex and gender discrimination. *Id.* Ms. Penland again requested clemency on June 13, 2008, alleging that her health and safety were in danger. *See* AR 42-43. These requests were denied on June 16, 2008, but the reviewing official forwarded Ms. Penland's health-and-safety complaints to the brig's commanding officer. *See* AR 41. Ms. Penland renewed her plea for clemency on August 25, 2008. AR 44-76.[1]

On June 23, 2008, her commanding officer recommended that Ms. Penland be separated from the Navy. AR 16-19. In addition to the court-martial conviction, the recommendation cited complaints by junior personnel against Ms. Penland in June and July 2006. Other alleged transgressions by Ms. Penland included exceeding her authority and ignoring the chain of command in communications with a contractor in January 2007; allowing a contract to lapse resulting in work stoppage in February 2007; and circumventing the chain of command in February 2007. *See* AR 18. The commanding officer noted further that Ms. Penland had been provided a Letter of Instruction dated March 7, 2007, detailing performance concerns and suggesting actions to help Ms. Penland improve her performance. *See* AR 19.

On October 8, 2008, Ms. Penland was directed by letter to appear before a Board of Inquiry and show cause why she should be retained in the Navy. The letter cited both "misconduct" (the conduct underlying Ms. Penland's conviction) and "substandard performance of duty," to wit, "failure to demonstrate qualities of leadership" and "failure to conform to prescribed standard." *See* Mot. to Dismiss, Ex. 2, Notification of Administrative Show Cause Proceedings [Dkt. 12-2 at 6] at 1. The letter warned that Ms. Penland's discharge could be

---

[1] Ms. Penland also appealed her court-martial conviction to the General Courts-Martial Convening Authority, which declined to reverse the conviction. *See Penland v. Mabus*, 643 F. Supp. 2d 14, 17 (D.D.C. 2009) (Urbina, J.). The matter was referred to the Office of the Navy Judge Advocate General (JAG), which investigated and upheld in February 2009 Ms. Penland's conviction. *See id.*

"Other Than Honorable." *Id.* at 2.  The Board of Inquiry voted 3-0 to separate Ms. Penland from the Navy and to characterize her service as "General (Under Honorable Conditions)." *See* Mot. to Dismiss, Ex. 3, Board of Inquiry Findings Worksheet [Dkt. 12-2 at 11].  The Board found by a preponderance of the evidence, and unanimously, that Ms. Penland both committed misconduct and demonstrated substandard performance of duty.  *Id.*

On July 29, 2009, Ms. Penland petitioned this Court for a writ of mandamus and moved for a preliminary injunction to prevent her discharge until she became eligible for retirement.  *See generally Penland*, 643 F. Supp. 2d at 17-18.  The Court denied Ms. Penland's request for temporary relief.  *Id.*

On July 31, 2009, Ms. Penland was separated from the Navy with a "General (Under Honorable Conditions)" character of service.  *See* AR 14-15.

### B.  The Board of Correction of Naval Records

Ms. Penland turned to the Board for Correction of Naval Records (BCNR).  She filed a petition on July 18, 2012 asking the BCNR to vacate her conviction and reinstate her to active duty so that she could retire with pension, benefits, and honors.  *See* AR 7-11.  Ms. Penland cited "procedural errors and violation of my constitutional rights," namely, that there was no evidentiary basis for her conviction and that her prosecution was motivated by race discrimination, gender discrimination, and retaliation for an April 2007 Inspector General (IG) hotline complaint.  *See* AR 8, 9.[2]

Ms. Penland further alleged conflict of interest; unlawful command influence; abuse of authority; and excessive cruel and unusual punishment by her commanding officers.

---

[2] Ms. Penland alleged that she reported fraud, waste, abuse, and civil rights violations—reports that she says were proven in June 2008.  *Id.*  Ms. Penland also claimed to have reported these abuses to her commanding officer in 2006, before charges were brought against her.  AR 11.

AR 9.  She alleged that the convening authorities, the government prosecutor, the command's

staff judge advocate, and the military judge should have recused themselves after being named in

Ms. Penland's IG complaints.  *Id.*  Ms. Penland contended that she was denied assistance of

counsel and a speedy trial by a jury of her peers.  AR 10.[3]

On May 15, 2013, the BCNR denied Ms. Penland's request.  Having considered

the materials submitted by Ms. Penland and the applicable law, the BCNR first concluded that it

had jurisdiction only to review the court-martial sentence for clemency—not to vacate the

conviction.  AR 4, 5.  The BCNR then found that Ms. Penland's sentence "was appropriate

considering the serious nature of [her] offenses."  AR 5.  The BCNR concluded further, as to the

Military Whistleblower Protection Act, 10 U.S.C. § 1034 (MWPA), that Ms. Penland failed to

prove a protected communication to the IG or to a Member of Congress.  *Id.*  Absent such a

communication, the BCNR could not find retaliation in her command's referring offenses to the

general court martial.  Finally, the BCNR apprised Ms. Penland of her right to petition the Naval

Discharge Review Board (NDRB) for an upgrade in the character of her discharge.  *Id.*

In her Amended Complaint, Ms. Penland asks the Court to "enter an Order

overturning the decision of the [BCNR] and order the Board to change the characterization of

Ms. Penland's discharge to honorable."  Am. Compl. [Dkt. 10] at 16.

## II.  LEGAL STANDARD

The Administrative Procedure Act (APA) provides that a reviewing court may set

aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736

(D.C. Cir. 2001).  "The scope of review under the 'arbitrary and capricious' standard is narrow

---

[3] Ms. Penland observed that only one African American male officer served on her jury.

and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  At the same time, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)); *see also Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result[.]").  While the agency action under review is "entitled to a presumption of regularity[,] . . . that presumption is not to shield [its] action from a thorough, probing, in-depth review." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

In an APA case such as this, motions for summary judgment provide "the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

## III.  ANALYSIS

The BCNR is only required to provide "a brief statement of the grounds for denial" of a servicemember's request.  32 C.F.R. § 723.3(e)(3).  In this case, that brief statement went awry.  The BCNR misread the Military Whistleblower Protection Act (MWPA) and unduly limited its scope.  That renders the BCNR's decision not in accordance with law.

The BCNR was correct that it cannot vacate Ms. Penland's convictions.  *See* 10 U.S.C. § 1552(f) ("With respect to records of courts-martial . . . action under subsection (a) [to correct an error or remove an injustice] may extend only to . . . action on the sentence of a court-

6

martial for purposes of clemency.").  Plainly this does not contemplate the BCNR serving as an appellate tribunal above the court martial.  *Payne v. Brownlee*, No. 04-cv-2175 (RCL), 2006 WL 785296, at *4 (D.D.C. Mar. 24, 2006) (finding that the BCNR "cannot set aside, invalidate, or overrule a court-martial conviction") (citing *Kendall v. Army Bd. for Correction of Military Records*, 996 F.2d 362, 364 (D.C. Cir. 1993)); *cf. Piersall v. Winter*, 435 F.3d 319, 323 (D.C. Cir. 2006) (noting that "the Congress has expressly prohibited boards of correction from reviewing the records of courts martial except in very limited circumstances" as delimited by Section 1552(f)).

Nevertheless, the BCNR misinterpreted the MWPA.  The BCNR accurately cited 10 U.S.C. § 1034(a)(1), which provides that "[n]o person may restrict a member of the armed forces in communicating with a Member of Congress or an Inspector General."  AR 5.  But it failed to recognize § 1034(b), which prohibits retaliatory personnel actions in reprisal for a communication to "any person or organization in the chain of command."  *Id.* § 1034(b)(1)(B)(iv).  Ms. Penland asserts that she complained to senior officers about waste, fraud and abuse in the Navy's contractors and contracting policies in Afghanistan and Iran in 2006, *before* she was charged with violations of the UCMJ.  Her complaints allegedly fell on deaf ears until she took them to the Inspector General in April 2007.[4]  Ms. Penland adds that these complaints were ultimately vindicated in 2008, but that is beside the point—whether or not the complaints had merit, Ms. Penland might have suffered reprisal for having filed them.

---

[4] This was two months before Ms. Penland was formally charged (on June 5, 2007).  AR 30-32. Thus, even if a communication to the IG were required under the MWPA, the BCNR could consider whether Ms. Penland's June 2007 charges were in reprisal for her April 2007 hotline complaint and, if so, whether she deserves clemency for that reason.

The BCNR was willing to consider whether Ms. Penland was entitled to clemency, but felt handcuffed by the MWPA's requirement that a servicemember communicate to the IG or to a Member of Congress. *See* AR 5 ("It is regretted that the circumstances of your case are such that favorable action cannot be taken."). That constraint was unwarranted, however, because it was based on a misreading of the MWPA's scope. *Id.* ("You are advised that to be eligible for status under the [MWPA], you must make a protected communication to an inspector general or a Member of Congress prior to any alleged reprisal."). That simply is not the case. The BCNR's conclusion that Ms. Penland's sentence was appropriate was therefore based on an incomplete picture.

Due to this legal error, the Court will remand this case to the BCNR to consider anew whether Ms. Penland is entitled to clemency. *See Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013) (per curiam) ("Usually, where a district court reviews agency action under the APA, it acts as an appellate tribunal, so the appropriate remedy for a violation is 'simply to identify a legal error and then remand to the agency.'") (quoting *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013)).

The Secretary argues that Ms. Penland's petition to the BCNR "did not request clemency or ask for a change in her sentence," and thus asks the Court not to entertain that argument now. Def. Mot. Summ. J. [Dkt. 32] (Mot.) at 15. It would have been odd for the BCNR to address a request that was never made. *See* AR 5 ("[T]his Board . . . can only review a sentence for clemency. *The Board found that your sentence was appropriate* considering the serious nature of your offenses.") (emphasis added). It would have been equally odd for Ms. Penland to attach her previous clemency requests, which she did. *See* AR 8. In sum, the Court cannot conclude that Ms. Penland failed to raise the clemency issue before the BCNR.

Nor can the Court conclude that she waived the point here.  *See* Mot. at 15 ("Plaintiff's Amended Complaint [does not] take issue with the Board's determination not to grant her clemency.  Thus, this Court has no reason to review the BCNR's determination not to grant Plaintiff clemency.")  (citing *Mylan Labs. Ltd. v. U.S. Food & Drug Admin.*, 910 F. Supp. 2d 299, 312 (D.D.C. 2012)).  The standard for pro se litigants is generous; courts liberally construe both the complaint and arguments made in opposition memoranda.  *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).  Ms. Penland's Amended Complaint alleges retaliation in violation of the MWPA—a ground for clemency that the BCNR expressly (though wrongly) refused to consider.  Am. Compl. ¶¶ 42-43 (Count III).  Ms. Penland specifically asks the Court to overturn that BCNR decision.  *Id.* at 16 (Prayer for Relief).  Although her opposition memorandum is not crystal clear—which is why courts must interpret generously pro se pleadings—Ms. Penland repeats her plea to overturn the BCNR decision.  Opp'n & Cross Mot. [Dkt. 35-1] at 12.  Taken in the aggregate, Ms. Penland's pleadings constitute a request for judicial invalidation of the BCNR's denial of clemency.

## IV.  CONCLUSION

For the reasons stated, Defendant's motion for summary judgment will be denied and Plaintiff's cross-motion for summary judgment will be granted in part.  This case will be remanded to the Board for Correction of Naval Records to reconsider whether Ms. Penland was a whistleblower under the MWPA and, if so, whether she is entitled to clemency.


Date: April 20, 2016                                    _____/s/_____
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge